## SESSIONS ET AL. VS. HARTSOOK.

A bill of sale of negroes containing a warranty of soundness, and providing a particular mode of compensation in case of unsoundness—as that the unsound negroes shall be returned and others substituted—the purchaser cannot, in a suit for the purchase money, recoup the damages suffered on account of the unsoundness of any of the negroes, without showing a return of, or offer to return the unsound negroes—the mode of compensation under such a contract being exclusively and mutually binding upon the parties: nor is the non-residence of the vendor a sufficient excuse for not returning or offering to return the unsound negroes—the vendee having the means of knowing where to return them.

Waiving the question, whether, in a suit upon a note given for the purchase money of negroes, the defendant could recoup the damages sustained by such negroes communicating disease to his other negroes, the facts must be shown by uncontradicted and legal evidence to entitle him to the defense here after an adverse finding by the jury.

A wrong instruction, which could not have injured the party against whom the judgment was rendered is no cause for reversal.

### Appeal from Chicot Circuit Court.

Hon. JOHN C. MURRAY, Circuit Judge.

GARLAND & RANDOLPH, for the appellant.

The clause in the bill of sale which required Templeman & Richardson to take back all unsound negroes, cannot operate to the injury of the defendants. It was, doubtless, inserted for their benefit. But it only expressed what the law itself implied. We cannot suppose it imposed any additional burden upon the defendants of tendering back the unsound negroes. This they could do, or not do, at their option. 2 *Stark. N. P.* 162.

But even if it was the duty of the defendants, by this clause, to make a tender of the unsound negroes, yet the fact that

Templeman & Richardson were not present to receive it, excused them. 2 *Parsons on Con.* 160; 7 *Barb. S. C. Rep.* 472; 3 *Watts & Serg.* 295.

So, then, the naked question is presented whether it is necessary, before a party can proceed for a breach of warranty, for him to tender the unsound article to the warrantor. And this has been often decided in the negative. See *Rotan vs. Nichols,* 22 *Ark. Rep.*

HUTCHINSON, for appellee.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

On the 13th of April, 1857, Richard R. Sessions and Daniel H. Sessions made their note to Templeman & Richardson, for the price of negroes bought of them, payable at the office of Hewett, Norton & Co., New Orleans, on the first of January following. By indorsement the note came to the hands of Hartsook, who brought suit upon it in the Chicot Circuit Court, in July, 1858. The suit was defended on the ground of particular unsoundness of two of the negroes, which caused the death of one of them, and made the other " comparatively worthless," and because all of the negroes were, when sold, suffering from an infectious cough, which greatly lessened their value, and which, by its communication to the other negroes of Richard R. Sessions, the buyer of the negroes from Templeman & Richardson, caused him great damage.

A bill of sale of the negroes was given to Richard R. Sessions, which contained a general warranty of their soundness of body and mind, and a provision that Templeman & Richardson were to take back such of the negroes as might be unsound and furnish others in their places. The plaintiff insisted that the defense was inappropriate to the action, as Sessions had made no offer to return any of the negroes to Templeman & Richardson on account of their alleged unsoundness, and because any loss that accrued to Sessions from the communication of disease to his other negroes, was too remote to be connected

with the purchase of those for which the note was given. To avoid the effect of these conclusions, the defendants claimed that Richard R. Sessions was relieved from any effort to return the negroes to Templeman and Richardson, as they did not reside in the State; and it is also maintained for them here, that the provision in the bill of sale for the return of the unsound negroes was inserted only for the benefit of Richard R. Sessions; that he might therefore waive his privilege, and have the benefit of any defense to which he would be entitled under the breach of the general warranty.

The bill of sale contained a warranty that the negroes, for which the note was given, were sound, but it also provided a special mode for the compensation that Sessions should have for their unsoundness, which was, upon their return to Templeman & Richardson, to have them substituted by other negroes. This mode of compensation was exclusive of any other, and was mutually binding upon the parties. Sessions might prefer to have sound negroes to any deduction from the price of the unsound: Templeman & Richardson might find it more easy, as negro traders, or for some other reason, to replace with others the returned negroes. But whatever were the inducements to such a contract, it was so made, and as made it must be abided by on the part of the sellers and buyer. The defendants then had no right to insist on such a defense as their notice of recoupment contained, without showing that Richard R. Sessions had fulfilled his part of the contract in returning, or offering to return the unsound negroes. Nor was he excused from this because Templeman & Richardson lived out of this State. It is not to be presumed that Richard R. Sessions would buy negroes to the amount of seven thousand, one hundred and fifty dollars, with the right to return unsound ones, and have others for them, and not know where to make his offer of return. The note was made payable at a particular place in New Orleans, out of the State, and it must be inferred that an enquiry at the office of Hewett, Norton & Co., would have been successful in finding the residence or locality of the sellers of

the negroes, had Sessions been earnest to ascertain the fact. And it is; besides, in proof that Templeman, one of the warrantors of the negroes, was in Pine Bluff much of his time, and kept a negro yard for the purpose of trading and selling negroes.

And upon the other branch of the case, in which Richard R. Sessions would recoup against the note the damages he sustained from the communication of the whooping-cough to his other negroes by those bought from Templeman & Richardson, he is debarred from relief; for, to be entitled to that defense here, after an adverse finding of the jury, it was necessary for him to have shown the facts by uncontradicted and legal evidence, which are not shown by the record. We do not, however, wish to be understood as intimating that, in any event, such damages as Sessions claimed could be allowed against the note. But upon the case presented, it is plain that, with our view of the effect of the contract, there was no error committed in suppressing parts of the depositions of Stone and of Miss Gibson, nor in giving the instructions of the plaintiff, except the fourth, nor in refusing the second, third and fourth instructions asked by the defendants, nor in not granting a new trial on account of such rulings of the court.

Ellen was one of the negroes whose unsoundness Richard R. Sessions alleged made her "comparatively worthless," and the plaintiff proved an offer of Johnson Chapman to take her and her child at the price that Richardson said, and Sessions admitted, they were computed at in the sale, which Sessions refused. Upon this the court instructed the jury, that if the facts were according to the evidence, nothing could be allowed to Sessions on account of the unsoundness of Ellen. Such is the effect of the plaintiff's fourth instruction. This implied that Sessions was bound to adjust his loss for Ellen's unsoundness in money, and at the price at which Ellen and her child were sold, which was incorrect. To obtain satisfaction for the loss of having an unsound negro put upon him, Sessions was not obliged to return the child that might have been sound, or

in his estimation worth more than it was valued in the trade. Yet this instruction, although wrong, could not have injured Sessions, for no method of compensation but a return of unsound negroes and taking of others, could have been accorded to him.

The first instruction given at the instance of the defendants was wrong, for Sessions was not entitled to any diminution from the note, notwithstanding Richard R. Sessions might have lost the labor of the slaves that were unsound when he bought them, and might have incurred expense in their case, until it had been shown that the loss and expense were necessarily incurred before Sessions could have offered to return the negroes. But of this the defendants, the appellants here, cannot complain.

Upon the whole record, the judgment against the defendants for the amount of the note and interest was right, and is affirmed.